NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 04-27686 |
| | : | |
| Russell T. Kivler | : | Chapter 7 |
| | : | |
|       Debtor. | : | |
| | : | **MEMORANDUM OPINION** |
| | : | Objection to Amended Proof |
| | : | of Claim - Document #248 |
| | : | Hearing Date: 1/8/09 & 2/26/09 |

**APPEARANCES**

**Theodore Liscinski, Jr., Esquire**
Law Office of Ted Liscinski, Jr., LLC
265 Davidson Avenue - Suite 200
Somerset, New Jersey 08873-4182
Attorney for Chapter 7 Trustee

**Martin K. Indik, Esquire**
Indik & McNamara, P.C.
31 Jefferson Plaza
Princeton, New Jersey 08540
Attorney for George V. DiDonato

**The Honorable Kathryn C. Ferguson, USBJ**

George V. DiDonato filed an Amended Proof of Claim against the estate of Russell T. Kivler on September 30, 2008. The Proof of Claim asserted an amount due of $4,089,000. The Chapter 7 Trustee, Theodore Liscinski, Jr., objected to the Amended Proof of Claim. The Court held hearings on the objection on January 8, 2009 and February 26, 2009. The parties agreed to have the Court review the expert reports without cross examination and to present closing statements in writing. The last closing statement was filed in April 2009.

## Background

Mr. Kivler, an attorney, had represented Mr. DiDonato in connection with the preparation of a pre-nuptial agreement that was later determined to be unenforceable as a matter of law by the New Jersey Superior Court. Mr. DiDonato claim that if the pre-nuptial agreement had been drafted in such a manner that it could have been enforced, he would have been awarded $3,684,000 and would only have been required to pay alimony for two years instead of $25,740 until he reaches the age of 65. His Proof of Claim is for the full amount of the value of his assets at the time of the dissolution of the marriage. Prior to Mr. Kivler's bankruptcy filing, Mr. DiDonato had filed a legal malpractice complaint against Mr. Kivler, but the complaint had not yet been reduced to judgment.

In his objection, the Trustee noted that the judgment of divorce was entered well after Mr. Kivler filed his bankruptcy petition, and alleged that the malpractice claim should be asserted against Mr. Kivler post-petition, not against his estate. Mr. DiDonato's counsel responded that he had filed the malpractice complaint on September 13, 2006, but that the amount of damages could not be fixed until the final judgment of divorce was entered.

After several ground skirmishes, the parties appear to have migrated towards the center of their dispute: Mr. DiDonato asserts that his claim should be fixed at $2,204,867, while the Trustee

believes it should be $1,032,720.

Analysis

The parties agree that the task facing the Court is to estimate the value of the claim under 11 U.S.C. § 502(c). That section provides that:

> There shall be estimated for purpose of allowance under this section-
> (A) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case....

The practical purpose of the section is to enable bankruptcy courts to reduce claims to dollar amounts without holding up distribution to all creditors until lawsuits can be completed. *See,* In re Cantu, WL 1374261, 1-3 (Bankr. S.D. Tex 2009). The principal consideration in an estimation proceeding must be an accommodation of the underlying purposes of the Bankruptcy Code. Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir.1982)

The Bankruptcy Code provides no direct guidance on the method bankruptcy courts should use when estimating claims. Courts, including our own Third Circuit, have consistently ruled that a bankruptcy court may use whatever method and procedures are appropriate to estimate the particular claim given the particular contingencies at issue. *See, e.g.,* In re Brints Cotton Marketing, Inc., 737 F.2d 1338 (5th Cir. 1984); Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir.1982); In re Continental Airlines, Inc., 57 B.R. 842, 845 (Bankr. S.D. Tex. 1985). In the Bittner case, the Third Circuit Court of Appeals affirmed an estimation approach that evaluated the "ultimate merits" of the claims in question. Bittner., 691 F.2d at 135. We start then, with evaluation of the merits of the underlying cause of action, with particular reference to the expert reports submitted.

Both experts apparently agree that a trial court is highly likely to find that Mr. Kivler committed malpractice in that the advice that he gave to Mr. DiDonato fell far short of the standard

of care required under N.J.S.A. 37:2-1. et seq. Both experts apparently agree that the $431,500 net equity in the marital residence is a valid part of the claim. There is some dispute as to the amount of the damage derived from the LBI property. The Trustee's expert simply takes 40% of the net equity, but the matrimonial decision is somewhat more nuanced than that. The Superior Court held that the parties would share the proceeds from the sale of the property net of the first mortgage, but that Mr. DiDonato would be solely responsible for the second mortgage. This Court therefore believes the appropriate measure of damages here is the $360,000 asserted by the claimant.

The parties also agree that $310,000 in permanent alimony is properly part of the calculation of damages. There is some dispute about the inclusion of *pendente lite* alimony, but this Court agrees with Mr. DiDonato's analysis that it should be included in its entirety at $118,788 due to the amendment to the Pre-Nuptial Agreement. Likewise, the parties agree that the cost of providing life insurance should be included in the measure of damages. They disagree on whether the cost should be based on a healthy person or one with compromised health, and whether insurance that Mr. DiDonato was ordered to purchase but did not should be part of the calculation. On the issue of the rate, the Trustee's expert did not have the benefit of the testimony presented in open court, but this Court did. Based on that, it finds that the higher rate is appropriate. As far as whether Mr. DiDonato actually procured all of the insurance that was ordered, this Court can only assume that there will be a day of reckoning in the Superior Court. While I cannot be sure when that day will come or what the Superior Court will do, I will allow the full amount to be included in the estimated claim for a total of $48,552. That brings the estimated claim to $1,268,840.

The next area of dispute is the amount claimed for increased attorney fees that Mr. DiDonato incurred in the matrimonial action that would not have been incurred but for the necessity of

4

litigation that would have been unnecessary if the pre-nuptial agreement had been enforceable. The Trustee argues that the estimate of 60% is untested and not documented with particularity. This argument is true as far as it goes, but ignores that this is an estimation proceeding rather than a proof hearing on a judgment. I have reviewed Judge Fleming's opinion at some length and believe that 60% is a reasonable estimate based on the amount of time dedicated to those issues in the opinion. I will allow $325,000 to be included in the estimated claim.

By far the biggest dispute between the parties is whether to include attorneys fees that would have been payable had Mr. DiDonato been permitted to continue his malpractice action and prevailed. The Trustee asserts that Mr. DiDonato lacks standing to pursue a claim on behalf of his attorneys and Mr. DiDonato asserts that he is permitted to include the one-third contingency as part of his measure of damages. The case law cited by Mr. DiDonato is not particularly convincing. First, Saffer v Willoughby, 143 N.J. 256 (1996) was highly fact specific and merely allowed a fee arbitration panel to consider legal malpractice in fixing a fee in the underlying case. The case is factually distinguishable and only addresses half of the equation currently before this Court. By its own terms, the decision applies to what the New Jersey Supreme Court called the "unique circumstances" of the case. Next, DiStefano v Greenstone, 357 N.J. Super. 352 (App. Div. 2003) addresses both the contingency fee in the underlying action and the contingency fee in the malpractice action, but ultimately limited the malpractice contingency based on the lodestar analysis. Mr. DiDonato has not provided any of that analysis here. Even in the context of an estimation proceeding, the only evidence of work done towards a contingency fee is a complaint and the expert report. It is simply not possible for this Court to estimate the attorney's fees at $550,592 as Mr. DiDonato requests. I will allow the $2,500 in bankruptcy attorney fees because I observed the work

that went into the bankruptcy litigation and it would not have been necessary for Mr. DiDonato to litigate his claim but for the malpractice. The balance of the claim relating to malpractice action attorney fees will not be included in the estimation.

Therefore, for the reasons set forth above, this Court will estimate under 11 U.S.C. § 502(c) Mr. DiDonato's claim at $1,596,340. Counsel to the Trustee shall submit a form of order consistent with this opinion.

/s/ *Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: June 3, 2009